IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE MCDONALD'S FRENCH FRIES   )
LITIGATION                      )   No. 06 C 4467
[MDL - 1784]                    )
                                )

## MEMORANDUM OPINION AND ORDER

Plaintiffs have brought claims against defendant McDonald's Corporation for violations of all of the fifty states' and the District of Columbia's consumer fraud and/or deceptive trade practices acts, breach of express warranty, and unjust enrichment. Plaintiffs, who have been diagnosed with certain medical conditions, are purchasers of McDonald's french fries and hash browns ("Potato Products") and claim they were deceived by defendant about the Potato Product's ingredients.

I.

The preparation process for defendant's Potato Products begins with the potato suppliers, who cut and par-fry[1] the Potato Products before distribution to the franchised McDonald's locations. The suppliers par-fry the potatoes in an oil made of 99% vegetable oil and 1% natural beef flavor. The beef flavor is made, in part, from hydrolyzed wheat bran and hydrolyzed casein (a dairy product). The

---

[1] "Par fry" is a cooking technique, sometimes also known as blanching or half-frying that involves partially frying the food but not browning it, so that it must be cooked again before serving. Generally this process is done so the food can be refrigerated or frozen without changing color, and for quickness of preparation when the product is served.

Potato Products are then finish fried in 100% vegetable oil at the restaurants prior to sale and customer consumption.

Defendant is alleged to have falsely claimed the Potato Products were gluten, wheat, and dairy-free through its website and in literature available at the restaurants, including their mention on a gluten-free menu items list. According to plaintiffs, the information provided was at best incorrect, if not intentionally misleading. Defendant, of course, disagrees.

Plaintiffs specifically disclaim any physical injury from the consumption of McDonald's Potato Products.[2] Plaintiffs claim they purchased Potato Products based solely on defendant's representations that those products were free of gluten, milk and/or wheat ingredients ("allergens"), that the Potato Products in fact contained these allergens, and that absent defendant's misrepresentations, plaintiffs would not have purchased the Potato Products. (Am. Compl. ¶¶ 64-66.) They claim economic harm as a result.

Plaintiffs seek recovery under theories of breach of express warranty, unjust enrichment, and violations of various states' consumer protection statutes for their actual economic harm (*i.e.*,

---

[2] *E.g.*, at oral argument on this motion: "They did not suffer a physical injury." (Tr. at 7.) In a stipulation, filed earlier in this case, plaintiffs also disclaimed any physical injury, at least in this lawsuit. I note these statements because at other times plaintiffs have been equivocal in describing the alleged harm.

the purchase price of the Potato Products) based on the difference in value between the gluten, wheat, dairy, and allergy-free products plaintiffs wanted and the non-conforming products they actually received.

II.

In determining whether class certification is appropriate, I must decide whether the prerequisites for Federal Rule of Civil Procedure ("FRCP") 23(a) are met, and whether plaintiffs can maintain this suit under FRCP 23(b). FRCP 23(a) requires that (1) the class is so numerous as to make joinder of all members impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately represent the class. FED. R. CIV. P. 23(a).

The determination of class certification under FCRP 23(a) turns not on the underlying merits of the case, but on whether the party seeking certification meets its burden under all the certification requirements of FCRP 23(a). *Harris v. Circuit City Stores, Inc.,* No. 07 C 2512, 2008 WL 400862, at *3 (N.D.Ill. Feb. 7, 2008)(citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). The district court has broad discretion in determining the propriety of certification. *Keele v.*

*Wexler*, 149 F.3d 589, 592 (7th Cir.1998); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993).

Plaintiffs' motion requests certification under FRCP 23(b)(3), which provides that class certification is appropriate where, in addition to the factors above, (1) common issues of law and fact predominate, and (2) a class action is superior to other forms of adjudication. FED. R. CIV. P. 23(b). Although I evaluate the motion for class certification without regard to the merits of this case, I may make factual or legal inquiries as necessary to determine whether class treatment is proper. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001).

### III.

Plaintiffs seek to certify the following national class:

> All persons residing in the United States (including the District of Columbia, territories and possessions) (i) who purchased Potato Products from McDonald's restaurants on or after February 27, 2002 through February 7, 2006[3] and (ii) who at the time of purchase had been medically diagnosed with celiac disease, galactosemia, autism and/or wheat, gluten or dairy allergies. (Pls.'s Mot. 1).[4]

---

[3] Plaintiffs claim McDonald's announced its allergen-free Potato Products on February 27, 2002, and changed its website and otherwise informed consumers of the wheat, dairy and gluten content of the Potato Products around February 7, 2006.

[4] Plaintiffs also seek to certify the following subclasses:

> All persons residing in the United States (including the District of Columbia, territories and possessions) (I) who purchased Potato Products from McDonald's restaurants

4

The proposed class is distinctly different from the claims in this case. It is not limited to persons who saw or otherwise knew about McDonald's representation that its Potato Products were allergen free and who purchased french fries or hash browns on the basis of the representation. The class therefore is overinclusive.

The difference between the claims alleged in this case and the class as defined by plaintiffs is not hypothetical. Named plaintiffs testified in their depositions that they were quite satisfied with the Potato Products they consumed. One of defendant's experts, Dr. Ami Klin, Ph.D., an expert on autism and the Director of the Autism Program and an associate professor at Yale University, testified by affidavit that most people with autism eat products containing milk, wheat, gluten and casein, and that there is no reliable evidence that any of these products contribute to or make worse a person's autism. Another defense

>   between September 2, 2005 and February 7, 2006 and (ii) who at the time of purchase had been medically diagnosed with celiac disease, galactosemia, autism and/or wheat, gluten or dairy allergies; and
>
>   All persons residing in the United States (including the District of Columbia, territories and possessions) (I) who purchased Potato Products from McDonald's restaurants on or after February 27, 2002 through February 7, 2006 and (ii) who can verify they complained to McDonald's about the presence of wheat, gluten and/or dairy in the french fries and/or hash browns.

5

expert, Stefano Guandalini, M.D., professor and chief of the Section of Gastroenterology, Hepatology and Nutrition at the University of Chicago and Medical Director of the University of Chicago Celiac Disease Center, stated in his affidavit that although persons who have celiac disease should consume less than 10 milligrams per day of gluten, and thus should attempt to follow a "gluten-free" diet, not all do, and that in his experience "many patients conduct their own 'trials' to determine what foods with gluten they have previously enjoyed that they may eat in moderation without experiencing symptoms." (Guandalini Aff., par. 35.) A third defense expert, Dr. Martha White, M.D., a board certified allergist and Director of Research at the Institute for Asthma and Allergy in Wheaton, Maryland, who treats 35 - 50 patients a year with wheat or milk allergies and who is herself allergic to milk, testified that she has never had a patient complain of symptoms from consuming defendant's Potato Products and that she herself consumed McDonald's french fries both before and after the disclosures at the heart of this lawsuit without any reaction.

None of this testimony is surprising since none of the named plaintiffs had any physical reaction to eating the Potato Products. It is fairly assumable, therefore, that many persons in the class as defined by plaintiffs have gone on eating defendant's Potato Products since defendant corrected its disclosure. By any

definition, these people have suffered no injury, not even the economic one claimed in this lawsuit.

What is left is a class of persons who because of their diagnosis of celiac disease, galactosemia, autism or a wheat, gluten or dairy allergy would not have eaten McDonald's french fries or hash browns if they had known they contained, potentially, a small amount of hydrolyzed wheat bran and hydrolyzed casein in the beef flavor that makes up one percent of the oil in which the potato suppliers par-fry the potatoes before shipping them to McDonald's, and who relied on a representation by defendant that its Potato Products were wheat or milk free in purchasing and eating the french fries or hash browns.

Although plaintiffs do not define their class with this limitation, at oral argument they admitted reliance is necessary to connect the representations with the economic harm they claim. They are correct in the latter admission, and because all of the Illinois laws relied upon by plaintiffs in this case to establish a claim for relief require individual proof that any injury be proximately caused by the misrepresentation made by a defendant, in *Oshana v Coca-Cola Co.,* 472 F.3d 506, 513-15 (7th Cir. 2006), the Seventh Circuit unequivocally held that a class should not be certified under any of these laws in circumstances very similar to the present case. Plaintiff in *Oshana* alleged a violation of the Illinois Consumer Fraud Act and unjust enrichment where the

defendant represented that Diet Coke was sweetened with aspartame, failing to disclose that fountain Diet Coke includes a mixture of aspartame and saccharin. The Seventh Circuit held that class treatment was inappropriate where it was likely that many, perhaps millions, of persons purchasing Diet Coke were not deceived or would have bought the product anyway. These people "could not show any damage, let alone damage proximately caused by Coke's alleged deception." *Id.* at 5134. The court also rejected plaintiff's argument that the Uniform Deceptive Trade Practices Act, or ICFA in Illinois, 815 Ill. Comp Stat. 505/2, did not require a showing of proximate causation, finding that private plaintiffs must meet the same requirements under the ICFA as under the Consumer Fraud Act.[5]

*Oshana* controls the decision in this case. Because plaintiffs do not define their class with this limitation, the class is both overinclusive and too indefinite for certification.

Rewriting the class definition would not solve the certification problem. The second problem plaintiffs face is that if the class were limited to persons with one of the stated

---

[5] The court cited *Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill.2d 100, 296 Ill. Dec. 448, 835 N.E.2d 801, 850 (Ill. 2005), for the proposition that Illinois requires a showing that damages are proximately caused by the deception. For further discussion in *Avery, see id.* at 861. In their reply brief, plaintiffs miscite an Illinois circuit court (trial court) decision as a federal case (which they then rely on although it precedes the Illinois Supreme Court's decision in *Avery* and relied on a lower court opinion that was reversed by the Supreme Court in that case), as well as numerous cases that precede *Oshana* and *Avery*.

8

diagnoses who purchased Potato Products in reliance on defendant's representations and who would not otherwise have purchased french fries or hash browns is the evidentiary headache this would create in proving a claim. Plaintiffs argue that proof would not be difficult because all the court would have to look at is a medical provider's letter supporting a class claimant's statement of diagnosis. In the first place, it seems unrealistic to think that millions of plaintiffs (or their doctors) would cooperate in providing a letter with a medical diagnosis for purposes of participating in a class in which the damage was $1.00 or $1.50 (compounded for repeat purchasers but still presumably a very small number). But assuming they did so, plaintiffs are asking the court to review and evaluate potentially millions of such letters. In addition, each claimant would have to affirm that he had seen the representation, purchased Potato Products on the basis of the representation, and no longer did so following defendant's disclosure in February, 2006. The Seventh Circuit has held that a class must be sufficiently definite that the members can be ascertained without a separate evidentiary inquiry into each member's claim. *E.g., Pastor v. State Farm Mut. Auto Ins. Co.,* 487 F.3d 1042, 1047 (7th Cir. 2007): "But when a separate evidentiary hearing is required for each class member's claim, the aggregate expense may, if each claim is very small, swamp the benefits of

9

class-action treatment." Similarly, in this case, the court time that would need to be expended outweighs the gain to be realized.

Plaintiffs fall back on the argument that at least one of its proposed subclasses, people who – with or without one of the diagnosed diseases or conditions – "can verify they complained to McDonald's about the presence of wheat, gluten and/or dairy" in the Potato Products, satisfies the requirements articulated by the Seventh Circuit. Presumably plaintiffs refer to persons who made complaints after February, 2006, when McDonald's disclosed its earlier error. But the proposed class still is not defined to be limited to persons who purchased french fries or hash browns that they would not have purchased but for McDonald's alleged misrepresentation.

I conclude that, as in *Pastor* and *Oshana,* the classes proposed by plaintiffs are too indefinite and overbroad, or are unmanageable.

IV.

Plaintiffs also fail to meet their burden under FCRP 23(b). In a multi-state class action, "a district court must consider how variations in state law affect predominance and superiority." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir.1996); *see also In re Bridgestone/Firestone*, 288 F.3d 1012, 1015 (7th Cir. 2002)(stating a class action is not proper unless all litigants are governed by the same legal rules). Here, plaintiffs seek

nationwide certification for claims of unjust enrichment, violation of consumer protection statutes, and breach of express warranty. While plaintiffs note some limited circumstances in which application of a single state's laws may be appropriate for a nationwide class action, they make no showing that those circumstances are present here and they fail to provide any choice of law analysis.

Numerous courts, including the Seventh Circuit, have dealt with this question. Overwhelmingly, those courts have found material conflicts among the fifty states' laws on the claims plaintiffs bring in this case and have denied class certification, at least in part, on that basis. *E.g., Bridgestone/Firestone*, 288 F.3d at 1015 (applying Indiana law, but noting "state laws about theories such as those presented by our plaintiffs differ, and such differences have led us to hold that other warranty, fraud, or products liability suits may not proceed as nationwide class action"); *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 532-33 (N.D.Ill. 2008) (finding that differences in state law on unjust enrichment precluded certification of nationwide class; citing numerous other cases stating the same); *Siegel v. Shell Oil Co.*, No. 06 C 0035, 2008 WL 4378399, at * 3-5 (N.D.Ill. Sept. 23, 2008)(denying class certification under FCRP 23(a)(2) and (b)(3), because plaintiffs failed to establish commonality, superiority and predominance due to multi-state law conflicts; describing the

material differences in state laws on unjust enrichment and consumer protection; citing numerous other cases stating the same). In this case, individual issues of law clearly predominate over common issues, making a nationwide class unmanageable.

V.

For the reasons stated above, plaintiffs' motion for class certification is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated:  May 6, 2009

12